JENKINS, J.,
dissents with reasons.
| íFinding that the majority’s opinion directly conflicts with this Court’s recent opinion in State v. Reyer, 13-0135 (La.App. 4 Cir. 11/20/13), 129 So.3d 752, I respectfully dissent.
Contrary to the majority’s opinion, I believe that the defendant has no obligation to prove when she is alleged to have committed a crime, or to file a bill of particulars to prove the alleged date. Rather, the law is well-settled that the defendant need only raise prescription as an issue; once raised, it is the State that has the burden of proving that the prosecution was timely initiated. Reyer, 13-0135, pp. 8-11, 129 So.3d at 757-759 (internal'citation omitted). Moreover, in Reyer, this Court specifically rejected an apparent attempt by the State to rely upon an “arbitrarily selected” date in its bill of information for the purpose of avoiding prescription. Id., 13-0135, p. 4, 129 So.3d at 755, fn. 5. Thus, where the State offers no evidence to show why the date set forth in the bill of information is valid, the date selected must, in the very least, coincide with the information already contained in the trial court’s record.
I find it also significant that the State never disputed the defense’s contention that its prosecution was initiated more than four years from the date of the alleged offense, in violation of La.C.Cr.P. art. 572(A)(2). The State instead |2argued that the prosecution was timely because the four-year prescriptive period had been interrupted, in effect, conceding to the December 28, 2007 date of offense stated in the defendant’s motion to quash.
Under the circumstances, I cannot join in the majority’s opinion. For the reasons more fully discussed below, I would affirm the trial court’s ruling granting the defendant’s motion to quash.
STATE V. REYER[1]
In Reyer, supra, the defendant, a contractor, was charged by bill of information dated July 18, 2011, with committing theft in the amount of $1,500 or more on August 7, 2007. Reyer, 13-0135, p. 1, 129 So.3d at 753. The defendant filed a motion to quash the bill of information arguing that the prosecution should be dismissed as untimely pursuant to La.C.Cr.P. art. 572 because neither he nor anyone at his company did any work for the victim after July 10, 2007-a period of more than four years before the bill of information was filed. Id., 13-0135, pp. 1-2, 129 So.3d at 753. After comparing the bill of information to the information contained in the application for arrest warrant, the trial court ruled in favor of the defendant, and granted the motion to quash. Id., 13-0135, p. 2, 129 So.3d at 754. The State appealed. Id. On appeal, the defendant argued that the *31 trial court’s ruling should be affirmed because the “ ‘Bill of Information ... picks a random date for the theft of August 7, 2007 which conveniently fits, by several weeks, the four (4) year prescriptive period for the crime charged.’ ” Id., 13-0135, p. 4, 129 So.3d at 755.
This Court’s review of the record revealed that the State never filed an opposition to the motion to quash and “no evidence was received, nor any offered” in connection with the motion to quash. Reyer, 13-0135, p. 2, 129 So.3d at 753-54. ^Nevertheless, in affirming the ruling of the trial court, this Court first examined the application for the arrest warrant and noted that the affidavit stated that the theft occurred on June 2, 2006 and/or July 10, 2007, when the defendant stopped working on the property. Reyer, 13-0135, p. 3-4, 129 So.3d at 754-55. Thus, calculating from the dates alleged in the affidavit of arrest, the theft would have necessarily occurred more than four years from the date the bill of information was filed. The bill of information itself, however, alleged that the theft occurred on August 7, 2007, less than four years from the date of the alleged theft. Id., 13-0135, 13-0135, p. 3, 129 So.3d at 754.
Applying the abuse of discretion standard, we affirmed the ruling of the trial court, concluding that the dates identified in the defendant’s motion to quash coincided with “the date[s] cited in Mr. Reyer’s arrest warrant affidavit and application prepared by the state.” Id., 13-0135, p. 7, 129 So.3d at 757 (Emphasis in original). We further observed that “[n]othing in the record supports the 7 August 2007 date chosen by the [SJtate.” Id. We agreed with the defendant that the date chosen by the State appeared to have been “arbitrarily selected for the purpose of avoiding La.C.Cr.P. art 572A(2).” Id., 13-0135, p. 4, 129 So.3d at 755, fn. 5
In Reyer, we also specifically recognized the State’s heavy burden of proving that the prosecution has not prescribed once the issue is raised by the defense as follows:
When a defendant has brought a motion to quash based on prescription, the state bears a heavy burden to demonstrate either an interruption or a suspension of the time limit has occurred. [State v.] Brumfield, [11-1599] pp. 7-8 [ (La.App. 4 Cir. 11/29/12) ] 104 So.3d [701] at 706, citing State v. Rome, 93-1221, p. 3 (La.1/14/94), 630 So.2d 1284, 1286. The state is not required to allege facts showing that the time limitation has not expired, “but when the issue is raised, the state has the burden of proving the facts necessary to show that the prosecution was timely instituted.” Id., p. 13, 104 So.3d at 709 [boldface emphasis in original; emphasis supplied].
Reyer, 13-0135, p. 8, 129 So.3d at 757 (Emphasis in original). Because the State offered no evidence to prove the date of the crime or when the victim knew or should have known that a crime had been committed, we found that the trial court did not abuse its discretion in granting the motion to quash. Id., 13-0135, p. 12, 129 So.3d at 759.
Thus, based on Reyer, I must therefore disagree with the majority’s conclusion that this Court may not rely on the dates set forth in the application for arrest warrant that is part of the trial court’s record when there is information to suggest that (1) the trial court, itself, relied on that information in reaching its judgment, and (2) the State does not dispute those dates. I believe that to hold otherwise would im-permissibly shift the burden to the defendant to show when the crime was allegedly committed in possible violation of a defendant’s constitutional right against self-in *32 crimination. U.S. Const., Amend. V; La. Const. Art. 1 Sec. 16.
To fully explain the reasons for my dissent, and why the rationale of Reyer, applies, I will begin by discussing the background and procedural history of this case.
BACKGROUND
This case stems from allegations that the defendant, Tynisa Cobb, stole $50,000 in grant money from Road Home assistance recipient, Ernest Horton, while employed by First American Title, the company responsible for processing and awarding Mr. Horton’s Road Home grant. According to the application for arrest warrant,[2] Mr. Horton applied for and was awarded a Road Home grant of over $100,000. The closing on the grant was scheduled to take place on December 23, 2007. Two weeks before the December closing, an unknown female contacted Mr. Horton and advised that there was a problem with the title to his property. Mr. | .-.Horton therefore agreed to surrender $10,000 of the grant money to resolve the problem. Two hours after the December closing, Mr. Horton was contacted by phone and advised that his file had been “pulled” and that his grant would be revoked unless he paid a fee of $50,000. Consequently, on December 28, 2007, Mr. Horton met the defendant at his bank where he authorized a cashier’s check to be made payable to the defendant, Tynisa Cobb, in the amount of $50,000.
The application for arrest warrant further states that the defendant contacted Mr. Horton at a later unspecified date to advise that he was eligible for a second grant in the amount of $80,000 to elevate his property. This time she told him that an additional $5,000 fee would be required to process his claim. As a result, on October 24, 2008, while attending the closing for the elevation grant, Mr. Horton allegedly mentioned the $50,000 payment previously made to the defendant and questioned the necessity of paying the additional $5,000 fee that she had requested. An investigation by the United States Department of Housing and Urban Development-Office of the Inspector General (“HUD”) into Ms. Cobb’s actions followed. HUD’s investigation confirmed that Ms. Cobb had been employed by First American Title; that she had endorsed the $50,000 cashier’s check; that no liens or other problems existed with regard to Mr. Horton’s property; and that Ms. Cobb had used part of the funds received from Mr. Horton to purchase a Mercedes-Benz. Continued attempts by HUD to locate Ms. Cobb had reportedly been unsuccessful. The investigation was later forwarded to the Orleans Parish District Attorney’s Office for additional investigation and prosecution.
^PROCEDURAL HISTORY
Prosecution was initiated on January 25, 2012, when Tynisa Cobb was charged by bill of information with one count of theft in the amount of $1,500 or more, in violation of La. R.S. 14:67(B)(1). In response, Ms. Cobb filed a motion to quash the bill of information at the arraignment held on February 10, 2012. In the motion, Ms. Cobb alleged that the bill of information filed by the State was untimely under La. C.Cr.P. art 572(A)(2), because more than four years had elapsed between the alleged commission of the crime and the institution of the prosecution. Specifically, her motion alleged that the crime of theft was alleged to have occurred on December 28, 2007, but the prosecution was not insti *33 tuted until January 25, 2012. The motion further alleged that Ms. Cobb at no time fled or did anything to avoid detection, which under La.C.Cr.P. art 575 would have extended the time by which the State had to initiate proceedings against her.[3]
The trial court ordered the State to respond to the motion to quash no later than February 17, 2012, and set the matter for hearing on March 16, 2012. At the hearing, the defendant argued that the motion to quash should be considered unopposed because the State did not file its memorandum in opposition as ordered by the trial court and did not request additional time to file it. The defendant also objected to the State being given the opportunity to orally respond to the motion to quash in the absence of a written response.
Without directly ruling on the defendant’s objection, the trial court gave the State an opportunity to respond. In response, the State admitted that it did not file an opposition or seek an extension of time to file one. Rather, the prosecutor 17claimed that the State was unable to respond with an opposition because the assistant district attorney responsible for screening the case had been out on sick leave.
Of significance, the State did not dispute the validity of the December 28, 2007 date set forth in the motion to quash. Instead, the State also argued that Cobb’s motion to quash should be denied on the grounds that the four-year deadline set forth by La.C.Cr.P. 572(A)(2) had been interrupted because the defendant had been “fleeing from justice.” La.C.Cr.P. art. 575. In support of this position, the State requested permission to call Special Agent Sam Pickens as a witness; however, it is unclear from the record whether the State was prepared to call Agent Pickens as a witness that day or whether it was asking to call Agent Pickens as a witness at a later date or time. The State also made no attempt to argue that the prosecution was timely on the face of the bill of information which alleged that the theft took place in 2011. After admonishing the State for failing to comply with the court’s order, and giving the State additional time to orally respond to the motion, the trial court granted the defendant’s motion to quash. This timely appeal followed.
DISCUSSION
In its sole assignment of error, the State claims that the trial court abused its discretion when it granted Ms. Cobb’s motion to quash based on La.C.Cr.P. art. 572(A)(2) which provides that no person shall be prosecuted for “a felony not necessarily punishable by imprisonment at hard labor” unless the prosecution is instituted within four years “after the offense has been committed.”[4] In support of its position, the State argues that La.C.Cr.P. art 573(1) extended the time by which |8the State had to initiate prosecution against Ms. Cobb. The State secondarily argues that it was improperly denied the right to *34 call Special Agent Sam Pickens as a witness and to put on evidence in opposition to the defendant’s motion to quash. Again, the State did not contest the defendant’s allegation that the crime is alleged to have occurred on December 28, 2007. It also did not argue that the trial court erred because the prosecution was timely on the face of the bill of information.
STANDARD OF REVIEW
The standard to be applied when reviewing a trial court’s determination on a motion to quash depends on whether the motion involves a legal issue, a factual determination, or a combination of the two. State v. Hall, 13-0453, pp. 11-12 (La.App. 4 Cir. 10/9/13), 127 So.3d 30, 39. Where the underlying motion to quash involves solely a legal issue, this Court applies a de novo standard of review. Id., 13-0453, p. 11, 127 So.3d at 39 (citing State v. Guillott, 12-0652, p. 4 (La.App. 4 Cir. 2/20/13), 155 So.3d 551; State v. Schmolke, 12-0406, pp. 2-4 (La.App. 4 Cir. 1/16/13), 108 So.3d 296, 298-99). On the other hand, where the motion to quash involves factual determinations or a mixed determination of facts and law, this Court applies an abuse of discretion standard. Hall, 13-0453, pp. 11-12, 127 So.3d at 39 (citing State v. M.C., 10-1107, p. 10 (La.App. 4 Cir. 2/18/11), 60 So.3d 1264, 1270; State v. Tran, 12-1219, p. 2 (La.App. 4 Cir. 4/24/13), 115 So.3d 672, 673, fn. 3; State v. Love, 00-3347, pp. 9-10 (La.5/23/03), 847 So.2d 1198, 1206).
The motion to quash filed by Ms. Cobb is based on allegations that the prosecution was untimely. When deciding a motion to quash based on prescription, a trial court is usually required to make factual determinations; therefore, in these instances we review the trial court’s findings under the abuse of discretion standard. See, e.g., State v. Dillon, 11-0188, p. 4 (La.App. 4 Cir. 8/24/11), 72 So.3d 473, 475; Reyer, 13-0135, pp. 4-5, 129 So.3d at 755; State v. Major, 13-1139, pp. 3-4 (La.App. 4 Cir. 4/9/14), 140 So.3d 174. |9“Because the complementary role of trial courts and appellate courts demands that deference be given to a trial court’s discretionary decision, an appellate court is allowed to reverse a trial court judgment on a motion to quash only if that finding represents an abuse of the trial court’s discretion.” Love, 00-3347, pp. 9-10, 847 So.2d at 1206.

Applicability of La. R.S. 573(1)

With these precepts in mind, I now address the State’s argument regarding the timeliness of the prosecution. The State does not dispute the defendant’s allegations that the alleged theft or misappropriation in this case occurred on December 28, 2007' — more than four years before the State filed its bill of information on January 25, 2012. Rather, the State argues that La.C.Cr.P art. 573(1) extended the time period for initiating the prosecution against Ms. Cobb. Article 573(1) provides that that the four-year time limitation set forth by Article 572(A)(2) does not begin to run where “[t]he offense charged is based on the misappropriation' of any money or thing of value by one who, by virtue of his office, employment, or fiduciary relationship, has been entrusted therewith or has control thereof.”
According to the State, the four-year prescriptive period could not begin to run in this case until October 24,2008, the date when Mr. Horton questioned the fees he had previously paid to Ms. Cobb. The States claims that this is because Ms. Cobb misappropriated the money under the guise of her office or employment as evidenced by the fact that (1) she worked for the company that processed Mr. Horton’s Road Home paperwork and awarded his grant; (2) represented that the money was required to clear up title problems to *35 the property; and (3) subsequent investigation revealed no liens on or other problems with the victim’s property warranting the collection of the $50,000. It is therefore the State’s position that it had four years from October 24, 2008, or until October 24, 2012, to institute | ^prosecution against Cobb. As a result, the bill of information filed on January 25, 2012 should be deemed timely.
Despite the State’s contentions, a review of the record reveals that the State failed to preserve this argument for appeal. The State does not dispute that it ignored the trial court’s request to file a written response or opposition to the defendant’s motion to quash. Therefore, if the issue had been preserved for this Court’s review, that would necessarily have occurred during the March 16, 2014 hearing on the motion to quash. It did not. Instead, the sole argument asserted by the State at the hearing was that the four-year deadline to initiate prosecution had been interrupted under La. C.Cr.P. art 575(1)[5] because of the defendant’s alleged attempt to “flee from justice.” As a general rule, we do not consider issues that were not raised in the pleadings, were not addressed by the trial court, or are raised for the first time on appeal. Stewart v. Livingston Parish Sch. Bd., 07-1881 (La.App. 1 Cir. 5/2/08), 991 So.2d 469, 474; See also, Graubarth v. French Market Corp., 07-0416, p. 5 (La.App. 4 Cir. 10/24/07), 970 So.2d 660, 664; Uniform Rules — Courts of Appeal, Rule 1-3. Because the State did not raise this as an issue before the trial court, this issue is not properly before us on review.
Nevertheless, even if this issue had been properly preserved for appeal, the trial court still would not have abused its discretion in failing to deny the motion to quash pursuant to La.C.Cr.P. art. 573(1). Although the State alleges that an Article 573(1) relationship existed between Ms. Cobb and Mr. Horton that would have interrupted prescription, I find that there is nothing in the record that establishes the nature of Ms. Cobb’s employment with First American Title, her job title, the scope of her duties, or whether she had access to Mr. Cobb’s records | nas a result of her position with the company. In fact, the record does not even confirm whether or not Ms. Cobb was still employed with First American Title at the time of the offense. Accordingly, this argument has no merit.

Admissibility of testimony and evidence

The State also argues that the trial court erred by not allowing Agent. Sam Pickens to testify at the hearing on March 16, 2012. The State asserts that the trial court’s reason for its refusal was the fact that no opposition was filed. According to the State, Agent Pickens’ testimony would have helpeS it to establish that the defendant left the jurisdiction in order to evade justice, thereby interrupting the running of prescription as set forth in La.C.Cr.P. art. 575(1). For the reasons explained below, this argument is also meritless.
Once a defendant flies a motion to quash contesting the timeliness of the State’s prosecution for an offense, the State bears a heavy burden of proving that the prescriptive period has not tolled. State v. Brady, 13-0863, p. 7 (La.App. 4 Cir. 12/11/13), 131 So.3d 166, 171 (internal citations omitted). Louisiana Code of Criminal Procedure article 577 provides that the State “shall not be required to allege facts *36 showing that the time limitation [for prosecution] has not expired, but when the issue is raised, the [S]tate has the burden of proving the facts necessary to show that the prosecution was timely instituted.” Because of this heavy burden imposed on the State, the trial court is ordinarily obligated to give the State time to respond to the motion to quash and satisfy its burden of proving its timeliness. See e.g., State v. Watts, 99-57,. p. 3 (La.App. 5 Cir. 5/19/99), 738 So.2d 628, 629 (wherein trial court erred in denying State’s request that defendant’s oral motion to quash be submitted in writing and set for hearing on future date).[6]
|12In this case, the record shows that the State was given ample opportunity to satisfy its heavy burden of proving that the prescriptive period had not tolled. After the defendant filed her motion to quash alleging that more than four years had passed since the she allegedly stole $50,000 from Road Home recipient, Ernest Horton, the State was given a week to respond in writing to the defendant’s motion to quash and over a month to prepare for oral argument. Despite the trial court’s order that the State respond in writing, the State neither filed an opposition nor requested an extension of time to do so.
The record further indicates that over the objection of defense counsel, the State was given an additional opportunity to respond to the motion’s allegations of untimeliness at the hearing scheduled on March 16, 2014. Rather than attempt to submit evidence to show that the four-year prescriptive period had been interrupted or had tolled, the State instead, vaguely argued that the four-year prescriptive period had been interrupted because Ms. Cobb “was fleeing from justice.” The State further stated that it “[would] supplement this in writing.” There is nothing in the transcript to indicate that the State was in any way prepared to satisfy its burden of proving that Ms. Cobb had left the jurisdiction in order to evade justice under La.C.Cr.P. art. 575(1). Moreover, the assistant district attorneys[7] admitted that they were not aware of the facts that would support this position. One of the ADAs explained that “there was some information unavailable to the State in regards to any possible defense to [the] Motion to Quash.” A second ADA, when trying to explain why this information was not obtained beforehand stated, “We were unable to make contact with the screener because he was in the hospital.”
The trial court later gave the State the opportunity to elaborate regarding its claim that the screener’s medical condition affected the State’s ability to reply to | isthe motion to quash. In response, the ADA admitted that they had “not been completely on the ball with this,” and that their office had been unable to file anything in writing beforehand because “[t]here was information that was actually not available” to the ADAs assigned to the case. The ADA further responded:
And that, Your Honor, I believe is very germane in this instance in this case, because if we don’t have that information, i.e., “Where is Miss Cobb to begin with?” [h]ow can we provide the Court with a proper response to begin with? We have an individual who is— and again, not to bring that in here — but *37 this is the individual who had the information as to why this case was even brought when it was brought. Why the Bill of Information was filed when it was? We don’t have that information to begin with, Your Honor. The only issue right now, Your Honor, [is] we did not file our extension of time.
At that point, the trial court expressed its dissatisfaction the ADA’s response, stating that the “duty to follow timelines set by the Court ... is an institutional responsibility” that “does not go to a particular individual within the office, it goes to the office.”
During the March 16th hearing, the State also advised the trial court that it wanted to “call Special Agent Sam Pickens to the stand at the hearing on the motion to quash.” Agent Pickens was identified in the NOPD report as having interviewed Ms. Cobb following her extradiction; however, as noted by the defendant, the State’s mention of Agent Pickens’s testimony was seemingly in the future tense, for a future hearing on defendant’s motion to quash. I agree with defendant’s assessment that the State’s phrasing makes sense only if it was contemplating a future hearing and not the hearing that was already underway.
Assuming, however, that the officer was present and waiting to testify, it is significant that the court did not expressly disallow the officer’s testimony. And although the court subsequently ruled on the motion without hearing any testimony, the State did not specifically object to not being allowed to call the 114officer,[8] nor did the State offer to proffer the officer’s testimony[9] despite the court’s invitation to allow the State to “complete [its] remarks” before the Court ruled. In fact, the State explicitly declined that invitation, declaring it “unnecessary.”
I lastly observe that there is little in the record to indicate that Ms. Cobb fled for the purpose of avoiding prosecution as required by Article 575(1). Although the application for the arrest warrant indicates that HUD had trouble locating Ms. Cobb, there is nothing to suggest that its failed attempts to locate her were the direct result of Ms. Cobb attempts to avoid detection or prosecution. There is also nothing in the record to explain why the police took so long to request a warrant for Ms. Cobb’s arrest. In Brady, 18-0863, p. 8, 131 So.3d 166, 171-72, we recently held that the trial court did not abuse its discretion in granting a motion to quash where the sole evidence the State relied on to prove an interruption of prescription under La.C.Cr.P. art 575 was the investigator’s affidavit stating that the defendant “fled the jurisdiction after he received monies from the alleged victims.” A defendant’s mere absence from the State does not automatically make the defendant a fugitive from justice as contemplated by Arti *38 cle 575. See, State v. Stanton, 209 La. 457, 24 So.2d 819, 823-824 (1949) (cited in State v. Bobo, 03-2362, p. 6 (La.4/30/04), 872 So.2d 1052, 1056, fn. 3).
115In concluding, I find it significant that in a case where the very matter at issue is the timeliness of the State’s prosecution, the State’s lackadaisical effort to, at minimum, timely seek an extension to file an opposition, present evidence, or to have a witness present to testify at the scheduled hearing on the motion to quash is inexcusable. Based on the foregoing, and for the reasons set forth in Reyer, I cannot say that the trial court abused its discretion in finding that the State failed to satisfy its heavy burden of proving that the four-year period for initiating the prosecution did not expire in this case.
I would therefore affirm the ruling of the trial court granting the defendant’s motion to quash.

. Reyer, 13-0135, 129 So.3d 752.

. The Application for Arrest Warrant was prepared by Detective Mary Lathouwers of the New Orleans Police Department and dated February 16, 2011.

. The motion to quash alleges that the defendant was charged with "the crime of theft over $500.00 in violation of La. R.S. 14:67(A),” while the motion to quash alleges a violation of theft over the amount of $1,500. This discrepancy is presumably attributed to the fact that at the time of the alleged offense, La. R.S. 14:67(B)(1) provided that theft in the amount of $500 or more was the highest grade of theft. Acts 2010, No. 585, § 1.

. The crime of theft in the amount of $1,500 or more — the offense Cobb was charged with violating — is a felony punishable by imprisonment with or without hard labor. See, La. R.S. 14:67(B)(1); State v. Ancoin, 457 So.2d 885, 886 (La.App. 3rd Cir.1984) (cited in Turner v. Dep't of Transp. & Dev., 01-2426, p. 5 (La.App. 1 Cir. 6/21/02), 822 So.2d 786, 790).

. La.C.Cr.P. art. 575 provides in part:
The periods of limitation established by this chapter shall be interrupted when the defendant: (1) For the purpose of avoiding detection, apprehension or prosecution, flees from the state, is outside the state, or is absent from his usual place of abode within the state....

. Cited with approval in State v. Bordenave, unpub., 13-1265, p. 2 (La.App. 4 Cir. 3/19/14), 2014 WL 1117973, (holding State should be given the opportunity "to prepare to meet its high burden of proof regarding the timeliness of the prosecution” where there was no evidence that the state was ever served with a copy of the motion). See also Major, 13-1139, p. 6, 140 So.3d 174.

. Hereinafter, "ADA.”

. See, Murphy v. 1st Lake Properties, Inc., 12-649, p. 10 (La.App. 5 Cir. 5/23/13), 116 So.3d 964, 971-72, wherein the Court explained:
For an issue to be preserved for review, a party must make a timely objection and state the specific ground for the objection. Failure to contemporaneously object constitutes a waiver of the right to complain on appeal. Further, the reasons for the objection must be brought to the attention of the trial court to allow it the opportunity to make the proper ruling ánd prevent or cure any error. Willis v. Noble Drilling (US), Inc., 11-598 (La.App. 5 Cir. 11/13/12), 105 So.3d 828, 835-36. On appeal, an appellant is limited to the grounds for objection that he articulated in the trial court and a new basis for the objection may not be raised for the first time on appeal.

. See also, McLean v. Hunter, 495 So.2d 1298, 1305 (La.1986) (Explaining that purpose of a proffer is to preserve evidence excluded by the trial court so that the evidence is available for appellate review).